Milo Steven Marsden (Utah State Bar No. 4879)
Peggy Hunt (Utah State Bar No. 6060)
Sarah Goldberg (Utah State Bar No. 13222)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Email:  marsden.steve@dorsey.com
        hunt.peggy@dorsey.com
        goldberg.sarah@dorsey.com

*Attorneys for Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>UD DISSOLUTION CORP.<br>     (fka, V3 Systems, Inc.)<br><br>Debtor. | Bankruptcy Case No. 14-32546<br><br>Chapter 11 |
| UD DISSOLUTION LIQUIDATING TRUST,<br><br>           Plaintiff,<br><br>v.<br><br>SPHERE 3D CORPORATION, incorporated under the laws of the Province of Ontario, Canada; V3 SYSTEMS HOLDINGS, INC., a Delaware corporation; PETER TASSIOPOULOS, an individual; JASON D. MERETSKY, an individual; ERIC L. KELLY, an individual; PETER ASHKIN, an individual; MARIO BIASINI, an individual; GLENN M. BOWMAN, an individual; DANIEL J. BORDESSA, an individual; VIVEKANAND MAHADEVAN, an individual; and JOHN DOES I-X,<br><br>           Defendants. | Adversary Proceeding No. 15-02196<br><br>The Honorable Joel T. Marker<br><br>**MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT** |

Pursuant to 28 U.S.C. §§ 1404(a) and 1412, Defendants respectfully move this Court for an order transferring this proceeding to the U.S. District Court for the District of Delaware (the "Delaware Federal Court"), pursuant to the forum-selection clause in Section 11.9 of that certain *Asset Purchase Agreement* ("APA") [1] entered into between Sphere 3D Corp. ("Sphere 3D"), V3 Systems Holdings, Inc. ("Holdings") and V3 Systems, Inc. ("V3"). V3 is the predecessor to the Debtor, UD Dissolution Corp.[2]

## I.   INTRODUCTION

In *Atlantic Marine Construction Company v. U.S. District Court*, 134 S. Ct. 568, 581 (2013), the U.S. Supreme Court made clear that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."

In this case, the parties' claims and counterclaims all arise out of the APA. In Section 11.9 of the APA, the parties clearly agreed that "[a]ny suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby" was to be brought in the federal court in Delaware. Accordingly, because the forum-selection clause mandates that Delaware be the venue for this dispute, and because there are no extraordinary circumstances unrelated to the

---

[1] A copy of the APA is attached as Ex. 1-B to Sphere's Proof of Claim. *In re UD Dissolution Corp.*, Bankr. Case No. 14-32546 (the "Bankruptcy Case"), Docket No. 26-2, Ex. 1-B.

[2] In the APA, V3 assigned the rights to the name "V3" to Sphere 3D, and changed its name to UD Dissolution Corp. APA § 2.1(a)(xvi).

convenience of the parties that justify disregarding the parties' contractually chosen forum, the Court should transfer this proceeding to the Delaware Federal Court.

## II. FACTUAL BACKGROUND

*The Claims and Counterclaims in this Adversary Proceeding*

1. On April 6, 2015, Sphere 3D filed a timely proof of claim in the Bankruptcy Case, asserting an unsecured claim in an undetermined amount (the "Proof of Claim"). On November, 6, 2015, Sphere and Holdings filed an amended proof of claim quantifying their claim in the amount of $13,051,576. *See* Bankruptcy Case, Docket No. 26-2 at 1. The basis of Sphere 3D's claims asserted in Proof of Claim is (1) that in the APA, V3 made "misrepresentations that caused [Sphere 3D] to enter into the [APA]," and (2) that V3 "breach[ed] the APA." *Id*. at 4.

2. On October 6, 2015, the UD Dissolution Liquidating Trust (the "UD Trust") filed a complaint against the Defendants (the "Complaint"), thus commencing this adversary proceeding. Docket No. 1. In the Complaint, the UD Trust asserts 24 claims, arising in contract, tort, and statute. Nonetheless, at bottom all of these claims are grounded in the APA as well. The UD Trust's claims fall into the following categories:

    a) Claims 1 through 6 are objections to Sphere 3D's Proof of Claim, which is expressly based on misrepresentations in and breaches of the APA;

    b) Claims 7 through 15 are all claims for affirmative relief which are explicitly based on the APA. Claim 7 alleges that "part of the purchase price to be paid to V3 under the APA was the Earn-out Amount," and that "Sphere has breached the APA with respect to the Earn-Out." Compl. ¶¶ 133, 138. Claim 8 alleges that "Holdback Shares were to be paid and transferred to V3 no later than June 21, 2015," and that

"Sphere and Directors have failed and refused to release the Holdback Shares." *Id.* at ¶¶ 145, 146. Claim 9 asks the Court to avoid a transfer that allegedly was fraudulent because "V3 completed the Transaction without receiving reasonably equivalent value for the assets conveyed by V3 to Sphere under the APA." *Id.* at ¶ 153. And Claims 10 through 15 are, by their terms, breach of contract claims based on provisions of the APA and related documents. *Id.* at ¶¶ 156-94.

   c) Claims 16 and 17 purport to be tort claims for interference with economic relations, but they are based on the APA as well. Claim 16 is hard to decipher, but it alleges that "Sphere and Directors" interfered by threatening to withhold liquidity "premised upon false pretextual claims of interference with the Bookman employment arrangements under Section 8.10 of the APA." *Id.* at ¶ 199. Claim 17 alleges that Sphere 3D interfered with "the economic relationship between V3 and the brokerage and transfer agents," when it communicated with the transfer agent concerning the lifting of the restrictive legend on shares issued to V3 under the APA. *Id.* at ¶ 206. Section 6.31 of the APA specifies the conditions under which the restrictive legend may be removed. Accordingly, this claim depends on the APA as well.

   d) Claims 18 and 19 are tort claims (for breach of fiduciary duty and conversion), again based on performances allegedly required of Sphere under the APA. Claim 18 alleges that Sphere and the Directors failed to disclose to V3 that they were "motivated to interfere with the Earn-Out [under the APA] in part to cover up their failure to negotiate a leak out provision in the APA, and to impose terms on V3 that were

4

neither negotiated nor agreed to in the APA. . . ." *Id.* at ¶ 215.  Claim 19 alleges that Sphere converted shares due V3 under the APA.  *Id.* at ¶¶ 218-21.

   e)  Claims 20 through 22 are fraud and misrepresentation claims which also explicitly reference and depend on the APA.  For instance, Claim 20 (for securities fraud) alleges that Sphere and its Directors made misrepresentations in order "to cause V3 to accept Sphere publicly trading stock as a significant and material part of consideration from the APA."  *Id.* at ¶ 227.  Similar APA-based allegations are in Claim 21 (negligent misrepresentation) ("[b]y entering into the APA, Sphere and Directors necessarily represented to V3 . . ."), *id.* at ¶ 235, and Claim 22 (intentional misrepresentation), *id.* at ¶¶ 239-43.

   f)  Finally, Claims 23 and 24 also arise out of the APA. Claim 23 is for unjust enrichment, based on the assertion that V3 conferred a benefit on Sphere 3D by "transferring its valuable assets having a transaction value of $14.7 million," and that it would be inequitable to allow Sphere to retain the benefit "without full payment of the transaction value under the APA."  *Id.* at ¶¶ 245, 247.  Claim 24 seeks injunctive relief based on UD Trust's assertion that it "has a reasonable probability of prevailing upon the merits of its claims that Sphere has breached the APA. . . ."  *Id*. at ¶ 250.

  3.  On January 13, 2016, Sphere and Holdings filed a Counterclaim against V3, UD, and UD Trust.  *See* Docket No. 23.  The Counterclaim asserted 8 claims for relief, all of which are based on breaches of the APA.

### *The APA*

4. V3 entered into the APA with Sphere and Holdings on or about February 11, 2014. Under the APA, V3 sold substantially all of its assets to Sphere. *See* APA § 2.

5. Under section 11.9 of the APA, the parties agreed that the Delaware Federal Court would be the exclusive venue for and have exclusive jurisdiction over litigation concerning disputes arising out of or in connection with the APA. Section 11.9 of the APA states:

> Jurisdiction. Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby *may be brought in the federal courts in the City of Dover, Delaware.* Each of the parties (i) consents to the *exclusive jurisdiction of such courts* (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding, (ii) *irrevocably waives, to the fullest extent permitted by Law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum*, (iii) will not attempt to deny or default such personal jurisdiction by motion or other request for leave for any such court, and (iv) *will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than such courts*. . . .

(emphases added).

6. In section 11.6 of the APA, the parties also agreed that the APA would be governed by and construed in accordance with Delaware law. *See id.* at § 11.6 ("Agreement will be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the Laws that might otherwise govern under principles of conflict of laws thereof.").

### III. ARGUMENT

In 2013, the U.S. Supreme Court handed down its decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568 (2013). The Court had granted *certiorari* to resolve a circuit split over how to enforce a contract provision that selects a federal forum other than the one in which the case was filed. Some circuits had held that such clauses rendered venue in other forums "improper," requiring dismissal under 28 U.S.C. § 1406. Others had held that a forum-selection clause was a factor to be weighed in determining whether a "convenience" transfer was appropriate under 28 U.S.C. § 1404(a).[3]

In a unanimous opinion, the Court held that the proper way to enforce a forum-selection clause is "by a motion to transfer under § 1404(a), which provides that '[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to

---

[3] In a case under title 11, the applicable statute may be 28 U.S.C. § 1412, rather than 28 U.S.C. §1404(a). There is some dispute as to which statute governs non-core proceedings and proceedings arising in or related to cases under title 11. However, for present purposes that controversy is immaterial because the analyses under sections 1404 and 1412 are identical. *In re LMI Legacy Holdings, Inc.*, --B.R.--, 2016 WL 3156481, at *1 n. 1 (Bankr. D. Del. 2016) ("A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under 1404(a) . . . ."); *Merchants Automotive Grp., Inc. v. Advantage Opco, LLC*, Case No. 14-cv-318, 2015 WL 728494, at *6 (D.N.H. Feb. 19, 2015) ("Authorities are divided on whether Section 1412 applies to actions related to cases under Title 11 or only actions under Title 11 or arising in cases under Title 11. It is not necessary to decide whether this case could be construed as a case related to a case under Title 11 and whether § 1412 would apply because transfer would be based on the same analysis that was used for § 1404.") (internal quotations and citations omitted); *Bank of America, N.A. v. Wilmington Trust FSB*, 943 F.Supp.2d 417, 426 n.5 (S.D.N.Y. 2013); *Quicksilver Res. Inc. v. Eagle Drilling, LLC*, Case No. H-08-0868, 2010 WL 1633348, at *4 (S.D. Tex. 2010) ("The application of 28 U.S.C. 1404(a) instead of 28 U.S.C. 1412 is a nonissue."); *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 98 n.3 (Bankr. S.D. Tex. 2009) ("Considering the nearly identical language in § 1404(a) and § 1412, courts have generally applied the same analysis to both.").

any other district or division where it might have been brought or to any district or division to which all parties have consented.'" 134 S. Ct. at 575 (citations omitted).

More important for this motion, in *Atlantic Marine* the Supreme Court laid out, in detail, the correct analysis for district courts to follow in considering motions involving forum-selection clauses, and the correct standard under which district courts must grant transfer in such circumstances. The Court explained that in a "typical case not involving a forum-selection clause," a district court evaluates "both the convenience of the parties and various public-interest considerations," and "weigh[s] the relevant factors [to] decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interests of justice.'" *Id.* at 581.[4]

But, the Court said, the analysis changes substantially "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (citing *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). When there is a valid forum-selection clause, its enforcement "protects [the parties'] legitimate

---

[4] When there is no forum-selection clause, courts typically consider the following non-exclusive factors:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

expectations and furthers vital interests of the justice system." *Id*. Accordingly, the Court said, "a valid forum-selection clause [should be] given controlling weight *in all but the most exceptional cases*." *Id*. (emphasis added).

The Court explained that the presence of a forum-selection clause requires a district court to modify its §1404(a) analysis in three ways:

*First*, the plaintiff's choice of forum is entitled to *no weight*. Rather, where there is a forum-selection clause, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id*. at 582.

*Second*, in evaluating a transfer motion the court "should not consider arguments about the parties' private interests." *Id*. This is because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. Accordingly, a trial court "must deem private-interest factors to weigh entirely in favor of the preselected forum." *Id*. The court may only consider arguments about public-interest factors. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*.

*Third*, when a party "flouts its contractual obligation" and files a lawsuit in a forum other than the one specified in the forum-selection clause, "a § 1404(a) transfer will not carry with it the original venue's choice-of-law rules." *Id*. In some circumstances, this "may affect public interest considerations." *Id*.

"[A]fter *Atlantic Marine*, the overwhelming majority of courts have applied the forum contained within a valid and enforceable forum selection clause." *In re I.E. Liquidation, Inc.*,

9

No. 06-62179, 2015 WL 5307446, at *3 (Bankr. N.D. Ohio Sept. 10, 2015). The Tenth Circuit has said that a mandatory forum selection clause should be enforced "unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (internal quotations omitted).

In this case, the *Atlantic Marine* analysis requires transfer to the Delaware Federal Court because the forum-selection clause in § 11.9 of the APA is mandatory and enforceable, and because there are no extraordinary circumstances unrelated to the convenience of the parties that justify disregarding the parties' contractually chosen forum.

A. **The Forum-Selection Clause is Enforceable, Mandatory, and Covers All Claims in the Complaint.**

Forum-selection clauses are "*prima facie* valid," *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992), and presumptively enforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

When a forum-selection clause provides for exclusive jurisdiction, courts have found the clause to be mandatory. *See Hugger-Mugger, L.L.C. v. Netwuite, Inc.*, Case No. 04-cv-592, 2005 WL 2206128, at *7 (D. Utah Sept. 12, 2005) (holding that forum-selection clause where parties agreed "to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California" to be mandatory); *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 821 F.Supp. 802, 818-19 (D. P.R. 1993), *vacated on other grnds. by*, *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 745 (1st Cir. 1994).

Here, the language of Section 11.9 is mandatory and *requires* that the UD Trust bring its claims in Delaware: "[e]ach of the parties (i) consents to the *exclusive jurisdiction of [the federal courts in the City of Dover]* . . . and (iv) *will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than [the federal courts in the City of Dover]*." APA § 11.9.

Moreover, the language of Section 11.9 is very broad and covers all of the claims in the Complaint. It applies to "[a]ny suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, [the APA] or the transactions contemplated" by it. Each claim in the Complaint is premised in some way on an alleged breach of the APA or transactions contemplated by or related to the APA. Even the UD Trust's claims objecting to the Proof of Claim arise out of the APA because the Proof of Claim itself is based on V3's breaches of the APA.[5] Accordingly, the Court should enforce the mandatory forum-selection clause in § 11.9.

**B.     The Public Interest Factors that the Court May Consider After *Atlantic Marine* Do Not Create an Exceptional Case that Weighs Against Transfer.**

After *Atlantic Marine*, the court starts with the presumption that the case should be transferred to the forum specified in the parties' contract. *Atlantic Marine*, 134 S. Ct. at 581.

---

[5] Sphere and Holdings did not waive their right to enforce the forum-selection clause by filing the Proof of Claim. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 204 (3d Cir. 1983), *rv'd on other grnds. by, Lauro Lines v. Cahsser*, 490 U.S. 495 (1989); *In re Sargent Elec. Co.*, 341 B.R. 514, 517-18 (Bankr. W.D. Pa. 2006); *In re Access Care, Inc.* 333 B.R. 706, 710 (Bankr. E.D. Pa. 2005) ("A litigant can certainly act defensively in a bankruptcy case located in a forum which the debtor has chosen without waiving its right under a forum selection clause."); *Matter of MAI Sys. Corp.*, Case No. 93-161, 1995 WL 84210, at *2 (Bankr. D. Del. Feb. 22, 1995).

The plaintiff must overcome this presumption and show that transfer is improper, and must do so solely on the basis of public-interest factors.

These public-interest factors include (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized controversies decided at home, and (3) the interest in having the trial of a diversity case in a forum that is at home with the law. *Id*. at 581 n.6; *Nelson v. Aramark Sports & Entm't Servs., LLC*, Case No. 14-cv-474, 2015 WL 1014579, at *2 (D. Utah March 9, 2015). In this case, none of these factors weigh against transfer.

The first factor, court congestion, does not weigh against transfer. A report on Federal Court Management Statistics shows that there are actually slightly more cases pending in the Utah federal court than in Delaware. *See* U.S. District Courts—Federal Court Management Statistics—Profiles—During the 12-Month Periods Ending September 30, 2010 and December 31, 2010 Through 2015, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/12/31-2. And while the number of the filings in Delaware is declining, the number of filings in the Utah federal courts actually increased last year. *Id*. Finally, although the time to disposition in Utah is one month shorter than in Delaware (11.6 months to 12.6 months) this difference is not material.

The second factor, the local interest in having localized controversies decided at home, weighs in favor of transfer. This is hardly a "local" dispute. V3 was a *Nevada company*, with its principal place of business in Utah. Sphere is a Canadian corporation, organized under the laws of Ontario, with its principal place of business in Mississauga, Ontario. The fact that V3 decided to file bankruptcy in Utah and that it chose to initiate this case as an adversary proceeding in the

Bankruptcy Court does not make the dispute between V3 and Sphere concerning the APA a "local" one.  Indeed under *Atlantic Marine* the court is prohibited from considering these facts.  Courts have applied *Atlantic Marine's* framework to cases in the bankruptcy context and enforced forum-selection clauses. *See In re I.E. Liquidation, Inc.*, 2015 WL 5307446 (Bankr. N.D. Ohio Sept. 10, 2015).  Even before *Atlantic Marine*, "the mere fact that [the] Debtor/Plaintiff [was] in bankruptcy [was] not sufficient to prevent enforcement of a contractual forum selection clause."  *In re Bailey*, 217 B.R. 523, 527 (Bankr. N.D. Tex. 1997); *see also, e.g.*, *In re Diaz Contracting, Inc.*, 817 F.2d 1047, 1052 (3d Cir. 1987) ("[N]either the bankruptcy court's intimate knowledge of nor Nanco's concessions concerning Diaz's precarious financial condition operates to discharge its burden of establishing grave inconvenience under *The Bremen*."); *Arrow Plumbing & Heating, Inc. v. N. Am. Mech. Servs. Corp.*, 810 F. Supp. 369, 373 (D.R.I. 1993) (stating that bankruptcy of debtor/plaintiff is not sufficient to prevent enforcement of contractual forum selection clause).

      Finally, the third factor also weighs favor of transfer.  This case does not involve the application of Utah law. The APA is expressly governed by Delaware law.  APA § 11.6. (And, at least one of the UD Trust's claims—breach of fiduciary duty—will be governed by Canadian law.)  Although this is not a diversity case, the fact that the APA is governed by Delaware law means that the Delaware court, not this court, is the one that is at home with the law.

      Because the public interest factors do not weigh against transferring the case to Delaware, this is not one of the "most exceptional cases" where a forum-selection clause should not be given controlling weight. *See Atlantic Marine*, 134 S. Ct. at 581.

## IV. CONCLUSION

For the reasons expressed herein, the Court should transfer this case to Delaware.

DATED this 22nd day of July, 2016.

**DORSEY & WHITNEY LLP**

 */s/ Milo Steven Marsden* 
Milo Steven Marsden
Peggy Hunt
Sarah Goldberg
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

      I hereby certify that on July 22, 2016, I electronically filed the foregoing **MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

- Kevin N. Anderson     kanderson@fabianvancott.com, kwall@fabianvancott.com
- Peter W. Billings     pbillings@fabianvancott.com, cmurdock@fabianvancott.com;mbeck@fabianvancott.com
- Sarah Goldberg     goldberg.sarah@dorsey.com
- Mary Margaret Hunt     hunt.peggy@dorsey.com, long.candy@dorsey.com
- Milo Steven Marsden     marsden.steve@dorsey.com, debry.leslie@dorsey.com
- Douglas J. Payne     dpayne@fabianvancott.com, mdewitt@fabianvancott.com;smcnett@fabianvancott.com

                                  */s/ Sarah Goldberg*